H. M. HAVNER, Appellee, v. J. H. MILLER, Appellant, et al., Appellees; R. R. BAGLEY et al., Interveners, Appellants.

**PRINCIPAL AND AGENT:** Fraudulent Profit Acquired by Agent. An agent will not be permitted to retain a profit which he has acquired by being unfaithful to his principal.

*Appeal from Cedar District Court.*—F. O. ELLISON, Judge.

JUNE 25, 1921.

PLAINTIFF brought this action to recover a fund of $3,550 in the hands of defendant bank. The bank held the money under instruction to pay it to J. H. Miller, appellant, and Miller claims it. Appellants R. R. Bagley and A. W. McGregor make conditional claim to the fund. The court awarded the fund to plaintiff, from which decree this appeal is prosecuted. Facts appear in the opinion.—*Affirmed.*

*J. C. France, H. J. Maurer,* and *C. J. Lynch,* for appellants.

*C. J. Lynch* and *E. E. Reed,* for appellees.

ARTHUR, J.—In the latter part of May, 1919, plaintiff, who desired to purchase land, was taken by interveners, Bagley and McGregor, real estate agents, to Jones and Cedar Counties, to look at farms in the vicinity of Mechanicsville. Among other

lands shown plaintiff was the Carl Kauffman farm of 355 acres. Kauffman lived in the state of Washington. This farm had been listed the previous year with Bagley, but he did not have it listed at the time it was shown to Havner. The farm suited Havner, and he became interested in its purchase. After looking at the Kauffman farm, Bagley and McGregor and Havner went to Mechanicsville, and there met Miller. Bagley introduced Miller to Havner. Miller was a real estate agent, located at Mechanicsville. The Kauffman farm was spoken of. Miller had had the farm listed at one time, but he did not have it at that time. The deal started with no one acting as agent to sell the Kauffman land. Miller and Bagley suggested that an offer be sent by Havner to Kauffman for the purchase of the land, and stated that the outside price on the farm was $225 per acre. Havner told them that he did not want to do that; that he thought it better to send someone out to see Kauffman; that a better deal could be made by having someone go out to see Kauffman than by sending an offer. Havner proposed that he would pay the expenses of the trip, if the farm was not secured, and said that, if it was purchased, he expected the seller to pay the usual 2 per cent commission, and was willing that the agents have that. Havner at that time expressly stated that he would not "stand for any price springing." Bagley and McGregor and Miller then had a talk apart from Havner, and reported to Havner that Miller would go out to see Kauffman. Havner then drew up a proposed contract, with the name of an employee, W. S. Ellis, as purchaser, on the basis of $225 per acre, and drew his check for $1,000, and told them that whoever went was to make the best deal he could with Kauffman. Havner explained at the time that Ellis would have no interest in the deal; that he placed his name in the proposal simply as a matter of convenience. Miller took the proposed contract made out by Havner, the $1,000 check made by Havner, and a note for $4,000 executed by Havner, and went to Kauffman's home in the state of Washington. He interviewed Kauffman. Miller wired Havner:

"To my surprise other parties had sent telegram to him but will close deal if get all cash above $42,000 now on place March 1st. Make your own terms. Answer."

To which Havner wired answer:

"Will pay all cash March 1st above $42,000 mortgage. You are authorized to change contract accordance to this message."

Also, Havner wired Miller, asking what commission Kauffman was paying, and Miller answered that Kauffman was paying 2 per cent; and that, as the down payment was to be cash, the check and note were being returned.

Under the original proposed contract, and as modified by making cash down payment, instead of by note, the ostensible purchase price for which Kauffman was selling was $75,875, being $225 per acre. However, at the same time these contracts were signed, Miller and Kauffman entered into a contract, fixing the real purchase price at $215 per acre, and 2 per cent commission, to be paid on that basis, and providing that Miller should receive the excess price of $10 per acre, in addition to 2 per cent commission. At the same time, Miller wired Bagley:

"Received wire, can get but two per cent. Can you and McGregor go three ways?"

Miller returned to Mechanicsville, and the papers executed in Washington were sent to the Monticello State Bank, where Havner was to make the down payment of $5,000, less an agreed discount of $200. After Havner made the payment at the bank, the $1,400 commission was drawn out and divided, Miller, Bagley, and McGregor, after some dispute, taking shares agreed upon. Miller concealed from Havner and Bagley and McGregor the arrangement whereby he was to receive $3,550 out of the purchase price that Havner was paying, which he was to receive at the completion of the transfer on March 1st.

When Havner, about March 1, 1920, was arranging for the completion of the transfer, he discovered for the first time the existence of the secret agreement whereby $3,550 of the purchase price was to go to Miller. Kauffman's deed was at the Monticello bank, with directions to deliver upon receipt of the full purchase price, and Kauffman instructed the bank to pay Miller the $3,550 out of this fund. Havner completed the purchase, and brought this action to recover the $3,550 which he claimed to be unlawful profit about to go to Miller, and enjoined the bank from paying same to Miller, whom he alleged to be insolvent and financially irresponsible. Plaintiff's posi-

tion is that Miller was acting for him in undertaking the purchase of the Kauffman farm, and in going to interview Kauffman to arrange such purchase; that Miller could not lawfully, while negotiating the purchase of the farm for plaintiff, by secret agreement with Kauffman arrange that $10 per acre be added to the price Kauffman was willing to take for the land, and obtain and hold the $10 per acre which was added to the purchase price and paid by plaintiff in performance of his contract with Kauffman; and that he (plaintiff) is entitled to recover the excess amount of $3,550 required to be paid under the contract by the secret agreement made by Miller with Kauffman while negotiating the purchase of the Kauffman farm.

Defendant Miller's position was that he was not acting as the agent of Havner in purchasing the farm, but was, in fact, the agent for Kauffman, the seller of the farm; and that this fact was known to Havner; that he acted in good faith in submitting to Kauffman the written offer made by Havner of $225 per acre; and that he was not bound to advise Havner of the contract between himself and Kauffman, as he was Kauffman's agent, and not Havner's.

There is no issue between interveners, Bagley and McGregor, and Havner. Interveners' claim upon the fund in controversy is that, if it shall be determined that defendant Miller is entitled to the fund, interveners, by reason of an agreement between them and Miller, are entitled to share in the fund, as a part of the commission for the sale of the land.

The decision of the case hinges upon whether Miller was the agent of Havner or of Kauffman in the transaction involved, and is a fact issue, to be determined from the evidence. We have the testimony before us of all the actors except Kauffman. What occurred that was not reduced to writing between Miller and Kauffman we are not informed.

Bagley and McGregor were showing to Havner farms listed with them, and in their travels viewed the Kauffman farm, which was not listed with either of them. The farm had been listed with Bagley in 1918, and he told Havner that Kauffman was then holding it at $225 an acre. The farm had never been listed with McGregor. The farm suited Havner, and he wanted to buy it. On going into Mechanicsville, the party, Bagley, Mc-

Gregor, and Havner, chanced to meet Miller. At one time, Miller had owned the Kauffman farm; and, after he had sold it, it was listed with him for sale for a time, but he did not then have it listed. As a witness, Miller testified:

"When I met these men, the latter part of May, 1919, I did not have the Kauffman farm listed."

The former listing price of the farm with Miller was $225 an acre. The thought was, no one having knowledge or authority to speak for Kauffman, that the farm might be purchased for $225 an acre; and Havner was willing to pay that price, if he could not acquire it for less. It was suggested by Miller and Bagley that an offer be sent by Havner to Kauffman of $225 an acre. Havner did not approve of that plan, but thought a man had better be sent to Washington to see Kauffman, because he thought a better deal could be made by having someone go to see Kauffman than by sending an offer; and in support of his idea, Havner proposed that he would pay the expenses of the trip, in the event the farm was not secured for him, but that, in the event the farm was purchased for him, the seller should pay the usual commission which owners pay to have their farms sold. Miller was selected to make the trip to Washington to see Kauffman. Miller testified:

"I said to Havner, 'Make out a contract and sign it, prepare a contract, make an offer' as he wanted it, and I would take the contract, and find out where Kauffman was, and try to get him on the contract."

Havner drew up a contract, placing $225 an acre as the proposed purchase price, gave Miller a check for $1,000 and his note for $4,000; and, as Miller says, "Havner turned all his papers over to me." On his arrival in Washington, on meeting Kauffman, Miller wired Havner that Kauffman wanted the down payment of $5,000 paid in cash, and Havner, by wire, authorized Miller to make that change in the contract, and Miller made the change. Miller says:

"Before these contracts were prepared and signed by me, I showed Kauffman, or the lawyers, the messages I had received from Havner, authorizing the change."

After it had been arranged between Miller, Bagley, and

McGregor, out of the presence of Havner, that Miller was to go to Washington, Havner said:

"I told them whoever went was to make the best deal he could with Kauffman on the best terms, but that the terms as given were not to be changed without my consent."

Havner testified:

"After Miller, Bagley, and McGregor had their talk in the hall, they came back and said Miller was to go and close the deal for me. Then I gave him instructions. I gave him the check and the note signed, and told him to make the best deal he could with Kauffman. I told Miller that, if he could not purchase it for less, I was willing to pay $225 for it."

McGregor testified:

"We went in and told Havner Miller was to go. Havner said he would buy the farm at $225 an acre on the terms indicated in the contract, provided it could not be got at a lower price or better terms. He said: 'I wish you to do the best for me. Buy it for the best terms possible and at the lowest price.' Havner said he was willing that we have the regular commission on the place, and wanted us to buy it as cheap as we could, and at the same time protect ourselves, and get the commission of 2 per cent."

Bagley testified:

"Havner read the contract over that had been written, and we told him that it was arranged for Miller to go. Havner told him to get the man's signature on this contract and buy the farm at the best price possible to get it."

Miller signed the final contract for the purchase of the farm in this way:

"W. S. Ellis and H. M. Havner. By J. H. Miller."

On closing the deal with Kauffman, Miller wired Havner:

"Returning home. Drawed sight draft as directed on you. All papers through bank."

While Miller contradicts the testimony of Havner, Bagley, and McGregor, and makes denial of his agency to purchase the farm for Havner, the facts conceded by him, the telegrams and contract, and the testimony of Havner, Bagley, and Miller, conclusively show such relation. After a careful examination of the record, we cannot accept Miller's version that he was acting

for Kauffman, and was not the agent of Havner. We are convinced that Miller was the agent of Havner. Admittedly, Miller did not represent Kauffman when he started to Washington. He did not then pretend to have the land listed with him. Manifestly, when Miller left Iowa, his errand was to purchase the Kauffman farm for Havner. Rightfully he could not secretly change masters after arriving in Washington and interviewing Kauffman. Miller's contention that Kauffman was allowing him $3,550 for some vaguely mentioned past service is not convincing. Miller reported to his associates, Bagley and McGregor, that it was with difficulty that he persuaded Kauffman to pay even the commission of 2 per cent. Miller was unfaithful to Havner, false to Bagley and McGregor, and deceived Kauffman. An agent is always held under obligation to account to his principal for the property or profits thereof which he has acquired by fraud upon his principal, and he may not retain profit or advantage derived by his failure to disclose to his principal, facts which it is his duty to disclose, to enable his principal to deal with the other party to the transaction to the best advantage. *Green v. Peeso,* 92 Iowa 261. Innumerable authorities might be cited, supporting this principle.

We come to the conclusion that the decree of the lower court is correct, and it is—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.